IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER M. TROTTER,

    **Plaintiff,**

    v.                                                                   CASE NO. 22-3285-JWL-JPO

TOMMY WILLIAMS, Warden,
et. al,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this pro se case under 42 U.S.C. § 1983. Plaintiff is in custody at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). On December 2, 2022, the Court entered a Memorandum and Order to Show Cause (Doc. 3) ("MOSC"), directing Plaintiff to show good cause why his Complaint should not be dismissed. The Court denied Plaintiff's motion for leave to proceed in forma pauperis, and directed Plaintiff to submit the $402 filing fee by January 3, 2023. Plaintiff has failed to submit the filing fee by the Court's deadline. Plaintiff has filed a response (Doc. 4) to the Court's MOSC.

Plaintiff alleges that when the nurse came to Plaintiff's cell to pass out his medications on Saturday evening, August 27, 2022, he noticed that the pills were a different shape and color from the pills he normally takes. (Doc. 1, at 7). Because the pills looked different, Plaintiff asked the nurse about the medication. *Id*. The nurse told Plaintiff that she did not know, but most likely the pills were just a different, generic version of his medication. *Id*. Plaintiff took the medication, and the pills "cause[d] [his] bladder to lock-up," and made him unable to urinate for over 42 hours. *Id*.

Plaintiff put in a sick call the next day (Sunday), and was seen the following day

1

(Monday) by a nurse from Centurion. *Id*. The nurse asked how long he had been taking his medication and whether or not he had ever had a reaction. *Id*. at 8. Plaintiff replied that he had been taking the medication for over a month and had never had a problem urinating. *Id*. The nurse ordered labs for Plaintiff "ASAP" to determine what medication he was given and to make sure there was no long-term damage. *Id*. The nurse made several calls to find someone to give Plaintiff a catheter, which he received about an hour later. *Id*. Plaintiff claims that as of the date he filed his Complaint—November 3, 2022—he still had not had lab work or any additional follow-up. *Id*.

Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment. *Id*. at 3. Plaintiff names Warden Tommy Williams and Health Service Administrator Sarah Madgwick as defendants. Plaintiff seeks $100,000 for the "pain and suffering [he] had to endure for over 42 hours. Along with the mental stress this has cause[d] [him] from the fear of the damage this has done to [his] body." *Id*. at 5.

The Court found in the MOSC that Plaintiff's allegations do not show a complete lack of medical care. A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976), *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

The Court also found that Plaintiff failed to show that any defendant was deliberately indifferent to his medical needs. Plaintiff has not alleged any personal participation by the Warden or the Health Services Administrator. Plaintiff has failed to show that either defendant

disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.  Plaintiff's claims suggest, at most, negligence, and are subject to dismissal.

In his response, Plaintiff claims that Warden Williams should be held liable because he failed to ensure that Centurion provided a follow-up visit.  (Doc. 4, at 2.)  Plaintiff claims he should have been given a follow-up visit to ensure that the medication he was given did not cause damage to his body.  *Id*.  at 2–3.  Plaintiff also claims that Defendant Madgwick, Health Services Administrator at EDCF, was made aware of the situation and responded to Plaintiff's grievance.  *Id*. at 4.

Plaintiff believes he was "more likely th[a]n not" given the wrong medication on August 27, 2022.  *Id*. at 7.  Plaintiff has not shown that any defendant was deliberately indifferent in giving him the wrong medication.  *See Logsdon v. Crawford*, 2022 WL 16963233, at *3 (E.D. Okla. Nov. 16, 2022) ("The fact that Logsdon allegedly received the wrong medication for a few days does not itself necessarily implicate any violation of his constitutional rights.") "[T]here is no Eighth Amendment violation when jail officials give the wrong medication to an inmate unless they were aware the inmate would react negatively to the medication." *Id*. (quoting *Martinez v. United States*, 812 F. Supp. 2d 1052, 1059 (C.D. Cal. 2010); *see also James v. Fed. Bureau of Prisons*, 79 F. App'x 417, 419 (10th Cir. 2003) (holding that plaintiff failed to allege a deliberate indifference claim, because medical staff did not knowingly administer a medication to which he was allergic); *Herndon v. Whitworth*, 924 F. Supp. 1171, 1173-75 (N.D. Ga. 1995) (holding that plaintiff who was given wrong epilepsy medication for three or four days, who told nurse the name of the correct medication, and who suffered several epileptic episodes as a result of receiving wrong medication, failed to make out a

claim for medical deliberate indifference)).

Plaintiff does not deny that he received medical attention following his inability to urinate, but rather takes issue with not being tested to determine if any other damage was done to his body. Plaintiff does not allege that he has suffered from any additional medical issues or symptoms after he was given a catheter on August 29, 2022. In *Cotton v. Bureau of Prisons*, the court found that plaintiff failed to state an Eighth Amendment claim where she alleged she was given the wrong medication, but "there [was] no allegation that the side effects she initially experienced were more than temporary or that they did not subside or resolve on their own without medical intervention." *Cotton v. Bureau of Prisons*, 2020 WL 907583, at *8–9 (N.D. Fla. Jan. 22, 2020) (finding that plaintiff did not allege that she suffered any symptoms that were made worse without treatment or that required later treatment), *adopted* 2020 WL 905538 (N.D. Fla. Feb. 25, 2020).

Plaintiff has not shown that the Warden or Health Services Administrator were deliberately indifferent to his medical needs. Plaintiff has failed to show good cause why this matter should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

Dated January 18, 2023, in Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**